IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ALICE MARIE MILLER                                                                               PLAINTIFF

V.                                  Case No. 06-CV-4094

MILLER COUNTY, ARKANSAS                                             DEFENDANT

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Defendant Miller County, Arkansas. (Doc. 20). Plaintiff Alice Marie Miller has responded. (Doc. 27). The Court finds the matter ripe for consideration.

**BACKGROUND**

Plaintiff, Alice Marie Miller, first worked as a correctional officer on the night shift at the Miller County Detention Center. According to Ms. Miller, shortly after she began her employment, she requested to be switched to the day shift because she was the primary caregiver to and custodian of her eight-year-old grandson who resides with her, and the day shift allowed her to spend more time with him. She was switched to the day shift and worked this shift for more than three years.

In July 2005, Ms. Miller began having serious health problems and took off work under the provisions of the Family and Medical Leave Act ("FMLA"). According to Ms. Miller, her employer advised her to complete the FMLA paperwork so that her day shift job would be protected while she was on leave. Ms. Miller was due to return to work on August 30, 2005; however, she was unable to return as expected because of additional medical restrictions. Ms. Miller was released to return to work on September 6, 2005. However, on September 5, 2005, Ms. Miller was informed by a

supervisor that her position on the day shift had been filled and that she should report for work on the night shift on September 7, 2005. Ms. Miller's day shift position was filled on September 2, 2005, and her replacement was a Caucasian female.

Ms. Miller told her supervisors that she could not work the night shift because she had to care for her grandson. Ms. Miller considered the statement that her position had been filled to be a constructive discharge and did not return to work. Shortly thereafter, Ms. Miller was formally terminated from her position because she failed to show up for work for three consecutive work days after she was notified of the shift change.

Plaintiff Alice Marie Miller has sued Defendant Miller County, Arkansas ("County"), alleging that she was transferred from the day shift to the night shift in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601. Her claim is based on the allegation that the County failed to reinstate her into the same position she had prior to her utilization of family medical leave time. Ms. Miller, who is African-American, further alleged that she was terminated from her employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).

This case is now before the Court on a Motion for Summary Judgment filed by the County. (Doc. 20). The County argues that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. The County urges the court to grant their motion and to dismiss Ms. Miller's Complaint in its entirety.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that rendering summary judgment against a party is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258 (8th Cir. 1997)). Nevertheless, the "'nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.'" *Id*. (quoting *F.D.I.C. v. Bell*, 106 F.3d 258 (8th Cir. 1997)). There must be evidence on which the jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

## DISCUSSION

*A. The FMLA Claim*

When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The Code of Federal Regulations provides the following:

> [a]n equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, prerequisites, and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a); *see also Cooper v. Olin Corp., Winchester Division*, 246 F.3d 1083, 1092 (8th Cir. 2001). Ms. Miller claims that, upon returning to work from family medical leave, a transfer from the day shift to "a more onerous" night shift, particularly under the circumstances of her case, is not a reinstatement to the same or an equivalent position. The County disagrees.

In support of its argument, the County cites one case from the Fifth Circuit, *Hunt v. Rapides Healthcare Systems, LLC*, 277 F.3d 757 (5th Cir. 2002). In this case, the plaintiff, a registered nurse and single parent, returned from medical leave and was notified that her day shift position had been

filled. *Id*. at 760-61. She was given the choice of switching to a position on the night shift that had the same benefits, responsibilities, and compensation as her day shift job or taking a part-time position on the day shift. *Id* at 761. She chose to take the part-time day position because her family situation required her to be at home at night. *Id*. The plaintiff claimed that her employer's failure to reinstate her to her former full-time day shift nursing position or an equivalent position violated her substantive rights under the FMLA. *Id*. at 763.

The County cites the *Hunt* case in support of its position that it offered Ms. Miller an equivalent position. However, the case actually supports Ms. Miller's argument that a genuine issue of material fact exists as to whether the offered night shift position was equivalent to Ms. Miller's previous day shift position for the purpose of the duty to reinstate under the FMLA. In *Hunt*, the Fifth Circuit Court of Appeals found that genuine issues of disputed fact existed that were material to determining whether her employer offered her a position equivalent to her prior job. *Id.* at 767.

The County cites *Hunt* for the premise that a "change in shift, without more, does not constitute an adverse employment action under the anti-retaliation provision of the FMLA." *Id*. at 771. The Fifth Circuit held that, in the context of retaliation claims, changes in shifts, without more, do not constitute adverse employment actions. *Id*. Here, Ms. Miller's claim is not a retaliation claim but instead a failure to reinstate claim. Thus, the specific holding on which the County relies is inapplicable to and distinguishable from the present case. *See id*. at 769. (indicating that the FMLA provides two distinct causes of action, retaliation claims and deprivations of substantive rights claims, to which courts apply different analyses).

The Court is not aware of any Eighth Circuit case that discusses whether a night shift position is equivalent to a day shift position for the purpose of the duty to reinstate under the FMLA.

However, the Court notes that 29 C.F.R. section 825.215(e)(2) states that an "employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule."

The Court finds that disputed facts exist that are material to determining whether the County offered Ms. Miller a position equivalent to her prior job. Furthermore, the County has not shown that, as a matter of law, it offered Ms. Miller an equivalent position. Thus, the County is not entitled to summary judgment on Ms. Miller's failure to reinstate claim under the FMLA.

B.  The Constructive Discharge Claim

Ms. Miller also claims that she was constructively discharged from her position when she was assigned to a position on the night shift because she informed her supervisors that her family situation prevented her from working the night shift hours. A constructive discharge occurs when an employee quits because his or her employer deliberately created intolerable working conditions with the intention of forcing the employee to quit. *Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997). To prove a constructive discharge claim, a plaintiff must show the following: (1) a reasonable person in his or her situation would find the working conditions intolerable; and (2) the employer intended to force him or her to quit. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). If a plaintiff cannot show that an employer consciously intended him or her to quit, he or she can still prevail on a constructive discharge claim if the employer could have reasonably foreseen that the employee would quit as a result of its actions. *Wright v. Rolette County*, 417 F.3d 879, 886 (8th Cir. 2005).

The questions here are (1) whether a reasonable person in Ms. Miller's position would have felt compelled to resign and (2) whether the County could have reasonably foreseen that she would quit as a result of its reassigning her to the night shift. The facts here, taken in the light most

favorable to Ms. Miller, certainly indicate that the night shift hours would be inconvenient and disfavored by Ms. Miller because of her desire to spend more time with her grandson. However, the Court cannot conclude that a transfer to the night shift with the same pay and benefits is objectively intolerable, such that a reasonable person would have felt that she had no other choice but to resign. *See Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 496 (8th Cir. 1996) (stating that a dissatisfaction with a work assignment or "difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign"). Moreover, only two days passed from the time the County informed Ms. Miller on September 5, 2005, of her change to the night shift and when Ms. Miller first failed to show up for the night shift on September 7. Ms. Miller never returned to work and was terminated on September 13, 2005. "An employer who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged." *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005) (quoting *Tidwell*, 93 F.3d at 494). There are no material facts in dispute as to this claim, and the situation as alleged by Ms. Miller is insufficient as a matter of law to establish that she was constructively discharged.

   C. The Title VII Claim

  Ms. Miller alleges that the County violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000(e), because it utilized race as a factor in its employment decision to either reassign Ms. Miller to the night shift or to terminate her employment after she failed to show up for work following the reassignment. To establish a prima facie case of race discrimination, a plaintiff must show that (1) he or she is the member of a protected group; (2) he or she was meeting the employer's legitimate expectations; (3) he or she was discharged; and (4) the discharge occurred in circumstances that give rise to an inference of unlawful discrimination. *Riser v. Target Corp.*, 458

F.3d 817, 819-20 (8th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the employee establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the employee's discharge. *Id*. at 820. If the employer meets this burden, the employee must then demonstrate that the nondiscriminatory reason offered by the employer was really a pretext for racial discrimination. *Id*.

      Here, for purposes of the summary judgment motion, the County concedes that Ms. Miller is a member of a protected group and that she was discharged. However, the County argues that Ms. Miller was not meeting its legitimate business expectations and that her discharge occurred in circumstances that do not give rise to an inference of unlawful discrimination. The County's argument is that Ms. Miller was not meeting its legitimate business expectations when she failed to show up for one week of work after she was scheduled to return to work on the night shift. However, the September 13, 2005 letter[1] to Ms. Miller from her supervisors, Ricky Hunter and Sue Nichols, implies that the reason for Ms. Miller's termination was because she failed to call and failed to show up for three consecutive work days, not for an entire week. There is nothing in the record that indicates that Ms. Miller was not meeting her employer's expectations up until the day she was assigned to the night shift. Therefore, the Court finds that Ms. Miller was meeting the County's legitimate expectations, which is the second element of her prima facie case.

      The Court now analyzes the County's argument that Ms. Miller cannot show that her discharge occurred in circumstances that give rise to an inference of unlawful discrimination. Here,

---

[1]This letter is attached to the Joint Affidavit of Warden Janice Nicholson, Lieutenant Sue Nichols, and Officer Kevin Hampton. (Doc. 20-2).

Ms. Miller asserts that she was discharged and replaced by a Caucasian woman with less seniority[2] than Ms. Miller and that two of the four people involved in the decision to terminate her were Caucasians. Thus, Ms. Miller has met her burden of proving that her discharge occurred in circumstances that give rise to an inference of unlawful discrimination, which is the fourth element of her prima facie case. The Court therefore finds that Ms. Miller has established a prima facie case of race discrimination.

The burden now shifts to the County to articulate a legitimate, nondiscriminatory reason for Ms. Miller's discharge. The County states that Ms. Miller was discharged because she failed to call and to show up for work for at least three consecutive work days. Thus, the burden is shifted back to Ms. Miller to show that this reason is really a pretext for racial discrimination. An employee may show pretext either by directly showing that his or her employer was more likely motivated by a discriminatory reason or indirectly by showing that his or her employer's explanation is unworthy of credence. *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998). Ms. Miller does not dispute that she failed to show up for work and failed to call for at least three consecutive work days. Furthermore, she points to no specific factual evidence that shows that the County was more motivated by discriminatory intent than the fact that she failed to call and to show up for work. Ms. Miller has offered nothing to show that the County's nondiscriminatory reason for terminating her was really a pretext for racial discrimination. Thus, there are no genuine issues of fact as to

---

[2] Ms. Miller states that the Caucasian woman who replaced her had less seniority than Ms. Miller. However, this conclusory statement by Ms. Miller is not supported by anything else in the record. Nevertheless, the Court, considering the facts in a light most favorable to Ms. Miller, will assume that Ms. Miller indeed has more seniority than the woman who replaced her.

whether the County intentionally discriminated against Ms. Miller because of her race, and the County is entitled to summary judgment on this claim as a matter of law.

## **CONCLUSION**

Upon consideration, the Court finds that the Motion for Summary Judgment filed by Miller County, Arkansas, should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Ms. Miller's FMLA claim will proceed to trial as scheduled, and her other claims are hereby dismissed with prejudice.

IT IS SO ORDERED, this 11th day of February, 2009.

    /s/ Harry F. Barnes  
Hon. Harry F. Barnes  
United States District Judge